**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON**

**CRIMINAL CASE NO. 14-32-GFVT-CJS-1
CIVIL CASE NO. 16-157-GFVT-CJS**

**UNITED STATES OF AMERICA**                                                    **PLAINTIFF**

**ORDER and**
**v.**                                  **REPORT AND RECOMMENDATION**

**JOHNNY BRUMLEY**                                                                   **DEFENDANT**

\*\*\*   \*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Johnny Brumley has filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255. (R. 93). The United States has filed its Response (R. 110), to which Defendant has filed a Reply (R. 113).[1] Having all relevant documents before the Court, the matter is ripe for consideration and preparation of a Report and Recommendation. For the reasons stated below, it will be **recommended** that Brumley's Motion to Vacate, Set Aside, or Correct Sentence (R. 93) be **denied**.

## I.    FACTUAL AND PROCEDURAL HISTORY

On August 28, 2014, a federal grand jury returned an Indictment against Defendant Johnny Brumley and one co-Defendant. (R. 1). Count 1 of the Indictment charged Brumley and his co-Defendant with conspiracy to distribute oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and 846.

---

[1] Brumley's Reply spans 26 pages, not including attachments. (*See* R. 113). Contemporaneously with his Reply, Brumley filed a "Pro Se Motion for Leave to File an Extended Traverse." (R. 112). In the Motion, Brumley requests leave to file his lengthy Reply, explaining that it was necessary to include "additional facts clarifying [his] grounds" for relief and the fact that the Reply is hand-written "greatly lengthens the pleading." (*Id*.). No objection to the Motion was filed. As such, Brumley's Motion for Leave to File an Extended Traverse (R. 112) will be granted.

Count 2 charged Brumley as being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  (*Id*. at 1-2).  The Indictment also included a forfeiture allegation against both Defendants.  (*Id*. at 3).  An arrest warrant for Brumley was issued on August 28, 2014.  ℝ. 4).  Brumley was arrested on September 2, 2014, and pleaded not guilty at his arraignment proceeding the next day.  (R. 7; R. 10).

### A.   Guilty Plea and Sentencing

On March 3, 2015, Brumley appeared with counsel for rearraignment and entered a plea of guilty to Count 1 of the Indictment as well as the forfeiture allegation pursuant to a written plea agreement.  (R. 54; R. 80; R. 81).  As to Count 1, Brumley admitted to the following facts contained within the plea agreement:

> (a) Beginning in or about May of 2009, the exact date unknown, and continuing through on or about August of 2014, in Clay County, Kentucky - which is located in the Eastern Judicial District of Kentucky - and elsewhere, the Defendant, Johnny Brumley, conspired with others to distribute a quantity of pills containing oxycodone, a Schedule II controlled substance.

> (b) Specifically, the Defendant admits that he was receiving oxycodone pills from several different sources of supply.  In turn, he was distributing a portion of these pills to end drug users/abusers in Southeastern Kentucky.

> © Throughout the time frame set forth in the Indictment, law enforcement used several cooperating witnesses (CWs) to make a series of controlled purchases from Brumley.  Moreover, law enforcement seized a quantity of oxycodone pills from Brumley during two separate search warrants.  In all, law enforcement seized or bought approximately 175 oxycodone 30 mg pills from the codefendants.

> (d) Based on the controlled purchases, witness statements, and other evidence, the Defendant admits that the United States could prove beyond a reasonable doubt that he is responsible for the distribution of oxycodone pills that correspond to a marijuana equivalency of between 80 and 100 kilograms.

ℝ. 80, at 2).

As part of the plea agreement, Brumley expressly agreed to waive his right to appeal his guilty plea and conviction but reserved the right to appeal his sentence. (*Id*. at 3). Brumley also expressly waived his right to collaterally attack his guilty plea, conviction, and sentence, with the exception of any ineffective assistance of counsel claims. (*Id*.). In addition, Brumley agreed not to file a motion for a decrease in offense level based on a mitigating role pursuant to United States Sentencing Guideline § 3B1.2. (*Id*.). In exchange for Brumley's plea, the Government agreed to move for dismissal of the remaining count against him (Count 2) and to recommend a decrease in his United States Sentencing Guidelines offense level by up to three levels in recognition of his acceptance of responsibility. (*Id*. at 1, 3).

At the rearraignment hearing, Brumley was placed under oath. ®. 107, at 2-3). Magistrate Judge Hanly A. Ingram[2] explained the serious nature of the guilty plea proceeding to Brumley and advised him to speak up if he had any questions so that his questions could be resolved. (*Id*. at 3-4). When asked if he understood, Brumley responded in the affirmative. (*Id*. at 4). Judge Ingram then questioned Brumley and his counsel to ensure Brumley was fully competent to enter a plea of guilty. (*Id*. at 9-15). Judge Ingram further confirmed Brumley had received a copy of the Indictment in this case and that Brumley had discussed the charges in the Indictment, and his case in general, with his attorney. (*Id*. at 15-16). When asked if he was fully satisfied with the advice, counsel, and representation his attorney had provided him, Brumley answered, "Yes." (*Id*. at 17). Brumley denied having any complaints about his attorney's performance. (*Id*.).

---

[2] District Judge Gregory F. VanTatenhove referred this matter to Magistrate Judge Ingram to conduct Brumley's rearraignment hearing. (R. 51). After being advised of his right to offer his plea to District Judge VanTatenhove, Brumley chose to waive said right and plead before Judge Ingram. (R. 107, at 5-7). Prior to taking the plea, Magistrate Judge Ingram ensured that Brumley had conferred with counsel about his decision and that his waiver was made in a knowing, voluntary, and intelligent manner. (*Id*.).

The Court informed Brumley that it had before it a plea agreement and a sealed supplement to that agreement and questioned Brumley extensively to ensure that he understood all of the terms contained therein. The Court specifically asked Brumley if he had read the plea agreement, if he had discussed the terms of the plea agreement with his attorney, if he understood the terms of the plea agreement, and if he had signed the plea agreement; Brumley answered in the affirmative to all of these questions. (*Id*. at 18).

Judge Ingram then confirmed Brumley understood the plea agreement is a contract that, while binding on Defendant and the United States, is not binding on the Court. In particular, Judge Ingram explained that the contents of the plea agreement were only recommendations Brumley and the Government have agreed to make to the District Judge at the time of sentencing. As such, Judge Ingram explained that if those recommendations are not followed, Brumley would not have a right to withdraw his guilty plea. (*Id*. at 19-20). Brumley agreed that he understood. (*Id*. at 20).

Judge Ingram directed Assistant United States Attorney (AUSA) W. Samuel Dotson to provide the essential terms of the plea agreement. (*Id*. at 20). AUSA Dotson described the terms of the plea agreement, including the fact that Defendant was pleading guilty to Count 1 of the Indictment as well as the forfeiture allegation and, in exchange, the United States had agreed to dismiss the remaining count at sentencing. (*Id*. at 20-21). AUSA Dotson further referenced the sections of the plea agreement detailing the maximum potential punishment for the offense charged and the recommended Sentencing Guidelines calculations. (*Id*. at 21). AUSA Dotson stated the parties have agreed, based on the facts contained in the plea agreement, that Defendant admits he is responsible for an amount of oxycodone pills corresponding to a marijuana equivalency of between 80 and 100 kilograms. (*Id*.). AUSA Dotson explained the portion of the plea agreement wherein

4

Brumley had agreed not to file a motion for a decrease in offense level based on a mitigating role; waived his right to appeal his guilty plea and conviction; and waived his right to collaterally attack his guilty plea, conviction, and sentence but for claims of ineffective assistance of counsel. (*Id*. at 22). Brumley agreed that AUSA Dotson's overview of the plea agreement accurately described his understanding of his agreement with the United States. (*Id*. at 23). Brumley denied that anyone forced or threatened him, in any way, to plead guilty. (*Id*. at 24-25).

Magistrate Judge Ingram informed Brumley of the rights he was giving up by pleading guilty, and Brumley confirmed he understood he was giving up those rights by entering his plea. (*Id*. at 26-28). Brumley was further informed of the potential penalties he faced by pleading guilty in order to ensure that he understood the maximum penalties that could be imposed by law. (*Id*. at 28-31). The Court explained the factors the District Judge would consider when imposing Brumley's sentence including the Sentencing Guidelines and how they operate. (*Id*. at 31-33). The Court informed Brumley that, after the plea but before sentencing, a Presentence Report (PSR) would be prepared by the Probation Office and that he would have the opportunity to review it with counsel and file any objections he may have to its contents. (*Id.* at 32-33). Brumley was advised that the District Judge would rule on his objections to the report, if any, prior to sentencing and then determine what the applicable Guidelines range should be. (*Id.* at 33). Brumley was again advised that if the sentence imposed on him is different from what he expected, he would not be able to withdraw his plea. (*Id*. at 33-34).

Judge Ingram read the waivers contained within the plea agreement to Brumley. (*Id*. at 35-38). Brumley affirmed that he understood the waivers, had discussed them with counsel, and no one

had forced or threatened him to make them. (*Id*.). As a result, Judge Ingram found that the waivers were made knowingly, intelligently, and voluntarily. (*Id*. at 38).

Turning to the facts of this case, the Court directed AUSA Dotson to describe all of the essential elements of Count 1 as well as what the Government would have to prove on the forfeiture allegation. (*Id*. at 39). After AUSA Dotson was finished, Brumley confirmed that he understood the nature of the charges and believed that the Government could prove the case against him at trial. (*Id*. at 40-41). Specifically, Brumley stated "I was buying oxycodone and selling them, and I knew it was against the law." (*Id*. at 41). He admitted that he and at least one other person had an understanding amongst themselves that his actions would result in the distribution of pills. When asked what kind of pills he was distributing Brumley stated, "Oxycodone 30s." Brumley confirmed that at the time of the offense, he knew oxycodone was a controlled substance. (*Id*.). He also admitted that law enforcement seized or bought approximately 175 oxycodone 30 milligram pills from the co-Defendants and that the United States could prove beyond a reasonable doubt that he was responsible for the distribution of oxycodone pills corresponding to a marijuana equivalency of between 80 and 100 kilograms. (*Id*. at 42-43). When asked how he pleaded to Count 1 and the forfeiture allegation in the indictment, Brumley stated "I plead guilty." (*Id.* at 44).

After the colloquy, the Court concluded that Brumley was fully competent and capable of entering an informed plea. (*Id*. at 44-45). The Court further found that the plea of guilty was a knowing and voluntary plea which was supported by an independent basis in fact containing the essential elements of the offense charged in Count 1 and the forfeiture allegation. (*Id*. at 45). As such, the Court accepted the plea and adjudged Brumley guilty of Count 1 and the forfeiture allegation. (*Id*.).

Following Brumley's rearraignment and prior to his sentencing hearing, the Probation Office prepared the PSR. The PSR contained a review of the facts of the case and provided the calculations under the Sentencing Guidelines that placed Brumley at a base offense level of 22. (PSR at 4, ¶ 12). With a three-level reduction for acceptance of responsibility, Brumley's total offense level was 19. (*Id*. at ¶ 20). The PSR also contained an analysis of Brumley's background, including his criminal history. (*Id*. at 5-13). Brumley's criminal history yielded a criminal history score of 8, however, 2 points were added pursuant to United States Sentencing Guidelines § 4A1.1(d) because Brumley committed this offense while under a criminal justice sentence of supervised release. (*Id*. at 11, ¶¶ 37, 38). As such, Brumley's total criminal history computation of 10 placed him in a criminal history category of V. (*Id*. at ¶ 39). Based on Brumley's total offense level of 19 and criminal history category of V, he had a Sentencing Guidelines range of 57 to 71 months of imprisonment. (*Id*. at 15, ¶ 64).

On July 2, 2015, Brumley appeared with counsel for sentencing. (R. 84). When asked if he received a copy of the PSR, Brumley answered "Yes, I did." (R. 108, at 2-3). Brumley further confirmed that he had an opportunity to review the PSR with his counsel and felt that he had enough time to have all of his questions answered. (*Id*. at 3). Defense counsel informed the presiding District Judge that Defendant had no objections to the PSR. (*Id*.). As such, the District Judge adopted and accepted the findings contained in the PSR, specifically finding that the recommended sentence in the PSR was correctly calculated. (*Id*. at 4).

The Court then heard from counsel for the Government, defense counsel, and Defendant regarding what the appropriate sentence should be in light of the circumstances. (*Id*. at 7-16). AUSA Dotson argued that a sentence towards the upper end of the Guidelines range was necessary

due to Brumley's criminal history and prior non-compliance with supervision. (*Id.* at 7-9). Defense counsel argued that a sentence towards the low end of the Guidelines range was more appropriate here. In support of his position, defense counsel argued that while Brumley cannot change his criminal history, he has been participating in substance abuse recovery programs while incarcerated and wished to make changes in his lifestyle when released. (*Id.* at 12-15). Counsel also pointed to the fact that Brumley has serious health concerns and would like to be released so that he would have time to spend with his family. (*Id.* at 15-16). The Court ultimately sentenced Brumley to 66 months of incarceration followed by a 3-year term of supervised release. (*Id.* at 22-32). Although he preserved the right to appeal his sentence, Brumley did not file a direct appeal.

### B.    Post-Conviction Proceedings

On July 14, 2016, Brumley filed a Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(2) seeking a reduction of his sentence under Amendment 782 to the Sentencing Guidelines. (R. 92). This Motion is still pending before the Court.

Also before the Court is Brumley's present Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (R. 93), referred to the undersigned for preparation of a Report and Recommendation pursuant to local practice. Brumley asserts a claim of ineffective assistance of counsel in his § 2255 Motion, alleging four grounds underlying this claim, and one claim of cumulative error. At the conclusion of the Motion, Brumley requests an evidentiary hearing on his claims.

## II.    ANALYSIS

Under 28 U.S.C. § 2255(a), a federal prisoner may seek habeas relief on grounds that his conviction or sentence violated the Constitution or laws of the United States, that the court lacked

jurisdiction to impose the sentence, that the sentence exceeded the maximum authorized by law, or

that the sentence is otherwise subject to collateral attack. *See* § 2255(a). A § 2255 motion does not

have to be founded on constitutional error or even federal law. *Watt v. United States*, 162 F. App'x

486, 502-03 (6th Cir. 2006). However, to succeed on a § 2255 motion alleging constitutional error,

a defendant "must establish an error of constitutional magnitude which had a substantial and

injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th

Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). To obtain relief under

§ 2255 for a nonconstitutional error, a defendant must establish either a fundamental defect in the

criminal proceedings which inherently resulted in a complete miscarriage of justice, or an error so

egregious that it amounts to a violation of due process. *See Riggs v. United States*, 209 F.3d 828,

831 (6th Cir. 2000), *abrogated on other grounds as recognized by Kumar v. United States*, 163 F.

App'x 361 (6th Cir. 2006); *see also Hicks v. United States*, 122 F. App'x 253, 256 (6th Cir. 2005);

*McNeal v. United States*, 17 F. App'x 258, 260-61 (6th Cir. 2001).

In sum, a defendant must allege in his § 2255 motion that: (1) his conviction was the result

of an error of constitutional magnitude; (2) his sentence was imposed outside of statutory limits; or

(3) there was an error of law or fact so fundamental as to render the proceedings invalid. *Pough v.

United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496-

97 (6th Cir. 2003)). A defendant must prove his allegations by a preponderance of the evidence.

*Pough*, 442 F.3d at 964.

### A.   Brumley has not shown that he received ineffective assistance of counsel.

In his Motion, Brumley presents four claims of ineffective assistance of counsel. Specifically,

Brumley alleges his counsel performed deficiently by: 1) failing to negotiate a plea agreement that

accurately reflects his culpability; 2) advising him to accept a plea agreement that held him accountable for an ambiguous quantity of drugs; 3) providing misleading advice during the sentencing phase and failing to object to the PSR; and 4) advising him not to seek a mitigating role reduction pursuant to United States Sentencing Guidelines § 3B1.2. ®. 93; R. 93-1). Brumley claims he was prejudiced by these deficiencies because each caused him to receive a longer sentence.

The Supreme Court has held that '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To meet this standard, the Court set forth a two-part test. First, a defendant is required to show that counsel's representation fell "below an objective standard of reasonableness." *Id*. at 687-88. In reviewing this prong, the lower court is to apply a deferential standard, i.e. there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. If a defendant satisfies the first prong, he must also establish that counsel's deficient performance prejudiced him. *Id*. at 691-94. Specifically, he must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In the context of a guilty plea, to establish prejudice a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill* v. *Lockhart*, 474 U.S. 52, 59 (1985).

Defendant must establish both prongs by a preponderance of the evidence. *Pough*, 442 F.3d at 964. However, "[w]hen deciding ineffective-assistance claims, courts need not address both components of the [deficient performance/prejudice] inquiry 'if the defendant makes an insufficient

showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697).

### 1. Brumley has not shown that his counsel failed to negotiate a plea agreement that accurately reflected his culpability.

Brumley argues his counsel was deficient for negotiating a plea agreement that did not accurately reflect his culpability in the drug conspiracy. In this regard, Brumley first claims that the quantity of oxycodone he was held accountable for in the plea agreement was overstated. In support of his contention, Brumley argues that he did not learn until after sentencing that 80 to 100 kilograms of marijuana equates to 80,000 to 100,000 oxycodone pills and that the number of pills he actually distributed in the conspiracy was "way less than 5,000 pills." (*See* R. 93-1, at 1, 4). Brumley further asserts that because he was incarcerated from August 2009 through January 2011, he could not have participated in the conspiracy during that time, rendering him less culpable. (*Id*. at 1). Finally, Brumley argues he was factually innocent of the 18 U.S.C. § 922(g)(1) firearm offense (Count 2). (*Id.*). According to Brumley, his counsel disregarded these "facts" when negotiating his plea agreement with the Government and merely "joined the governments [sic] contentions without affording relevant and viable negotiations." (*Id.* at 2). Brumley claims his counsel's failure to assert his above allegations during plea negotiations resulted in the calculation of a higher base offense level which, in turn, led to imposition of a longer sentence. (*Id.*). Brumley contends he should be "afforded [the] opportunity to negotiate anew or resentencing." (*Id.* at 3). Brumley's argument is, however, unconvincing.

Brumley's first claim, regarding the drug quantity, fails because it is based on his erroneous statement that 80 to 100 kilograms of marijuana is equal to 80,000 to 100,000 oxycodone pills.

Rather, 80 to 100 kilograms of marijuana equals approximately 399 to 497 oxycodone pills, 30 milligrams.  Thus, Brumley's plea agreement held him accountable for a quantity of pills far less than 5,000, in accordance with Brumley's assertion he distributed "way less than 5,000 pills" in the conspiracy.

In his Reply brief, Brumley attempts to save this argument by relying on the calculations in the Government's Response.  In its Response to Defendant's § 2255 Motion, the Government alleges that 80 to 100 kilograms of marijuana is equal to approximately 300 to 400 oxycodone pills, 30 milligrams.  (R. 110, at 4).  In his Reply, while Brumley now states he "accepts" that his plea agreement held him accountable for 300 to 400 oxycodone pills, 30 milligrams, he also now argues that this quantity of pills (300 to 400) is equal to a marijuana equivalency below the 80 to 100 kilogram range he was held accountable for.  (R. 113, at 2-6). Specifically, Brumley notes that 300 to 400 oxycodone pills, 30 milligrams, is equal to 60.3 to 80.4 kilograms of marijuana and, thus, he should have been held accountable for a range of 60 to 80 kilograms of marijuana which corresponds to a base offense level of 20.  (*Id*. at 4-6, 9-10).

These contentions by Brumley in his Reply do not save his claim.  It appears Brumley is correct in his assertion that 300 to 400 oxycodone pills, 30 milligrams, is not equal to 80 to 100 kilograms of marijuana, at least according to the Court's calculations.  Rather, 80 to 100 kilograms of marijuana would be equal to approximately 399 to 497 pills.

399 pills x 30mgs = 11970mgs/1000 = 11.97 grams x 6700[3] = 80,199 grams/1000 = 80.199kgs

497 pills x 30mgs = 14910mgs/1000 = 14.91 grams x 6700 = 99,897 grams/1000 = 99.897kgs

---

[3] Application Note (8)(D) to Sentencing Guidelines § 2D1.1 provides 1 gram of "Oxycodone (actual)" = "6700 grams of marihuana."

12

Nevertheless, Brumley cannot now seize upon this statement made by the Government for the first time in its Response to his post-conviction § 2255 Motion and point to it as evidence that he agreed to be held accountable for 300 to 400 oxycodone pills, 30 milligrams. The record plainly reflects that Brumley pleaded guilty and was sentenced to distributing a quantity of 30 milligram oxycodone pills corresponding to a marijuana equivalency of between 80 and 100 kilograms. In this regard, the transcript from Brumley's rearraignment hearing provides:

> THE COURT: Okay. Did anybody -- well, in the plea agreement, paragraph 3 says that the United States could prove the following facts, among others, that establish the essential elements of Count 1 beyond a reasonable doubt and that the defendant admits these facts, and there are four subparagraphs there that contains a factual description. Before you signed your plea agreement, did you read all of that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: To the best of your knowledge, are all the facts there accurately described?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And there's a quantity in here that law enforcement seized or bought approximately 175 oxycodone 30 milligram pills from the co-defendants. Do you agree with that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: It also says that you're admitting the U.S. could prove beyond a reasonable doubt that you are responsible for the distribution of oxycodone pills that corresponds to a marijuana equivalency of between 80 and 100 kilograms. Do you agree with that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you think the government can prove all the facts you've told me about today and that are there in your plea agreement by proof beyond a reasonable doubt at a trial?

THE DEFENDANT:  Yes, I do.

(R. 107, at 42-43).   Thus, Brumley admitted under oath that the Government could prove he distributed oxycodone 30 milligram pills equal to between 80 and 100 kilograms of marijuana, which quantity corresponds to a base offense level of 22.   A defendant's representations under oath at rearraignment proceedings are afforded great weight.  *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings," and "[s]olemn declarations in open court carry a strong presumption of verity.").   As a result, Brumley has failed to demonstrate that the quantity of drugs in his plea agreement was overstated or otherwise inaccurate, and counsel did not perform deficiently for failing to raise such an assertion during plea negotiations.

In another attempt to recover his argument that counsel was ineffective during plea negotiations because the quantity of drugs in his plea agreement was overstated, Brumley alleges, for the first time in his Reply, that the oxycodone pills he distributed contained 27 milligrams of oxycodone, not 30 milligrams.  (R. 113, at 4-5, 9-10, 13).   In support of this argument, Brumley argues that, for purposes of determining drug quantity under the Sentencing Guidelines, it is the weight of the actual oxycodone contained within the pills that should be taken into consideration and not the weight of the entire pill.  (*Id*. at 4).   According to Brumley, the type of pills he distributed contained only 27 milligrams of oxycodone.   Brumley attaches an Affidavit to his Reply brief in which he (Brumley) avers "[t]he oxycodone pills involved in this case are entitled, 'Roxidone'" and "[t]he 30mg pills contain 27mgs of oxycodone."  (R. 113-1, at 2).   Brumley further states "[t]he above purity information was obtained from a medical website."  (*Id*.).

14

Brumley's raising this contention for the first time in his Reply filing is improper and his newly-raised claim could be rejected on this basis alone. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) (citing *Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004)); *see also United States v. McCorkle*, No. 1:07-cr-288, 2010 WL 2131907, at *7 (W.D. Mich. Mar. 30, 2010)(collecting cases); *Burns v. Lafler*, 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004).

In addition, Brumley has the burden of establishing he received ineffective assistance of counsel in this regard. The only evidence he offers in support of his argument that the oxycodone pills he distributed contained only 27 milligrams of actual oxycodone is his own Affidavit stating such. Brumley does not claim to have any medical expertise to support his contentions. Instead, his source for his averments is an unidentified "medical website." Brumley's Affidavit is insufficient to establish that the oxycodone pills he distributed contained 27 milligrams of oxycodone for federal sentencing purposes.

Further, Brumley's plea agreement provides he admitted that the United States could prove beyond a reasonable doubt he was responsible for the distribution of oxycodone pills corresponding to a marijuana equivalency of between 80 and 100 kilograms. Notably, this quantity is without reference to the purity of any of the oxycodone pills involved in the conspiracy. Thus, Brumley's admission to the quantity of drugs contained in his plea agreement stands regardless of the amount of oxycodone each pill contained. Thus, Brumley has not shown through this argument that the plea agreement he voluntarily entered into overstated the quantity of oxycodone he distributed in the conspiracy and, therefore, that his attorney performed deficiently during plea negotiations.

Brumley also claims that his plea agreement did not accurately reflect his culpability in the drug conspiracy because Attorney Edwards disregarded during plea negotiations the "fact" that

15

Brumley was incarcerated from August 2009 until January 2011. This argument does not warrant relief.

Brumley provides no proof that his attorney did not take his alleged period of incarceration into consideration when negotiating the drug quantity included in the plea agreement. The burden is on Brumley to prove his claims. *Pough*, 442 F.3d at 964. Brumley's assertion that he was incarcerated for a period of time during the conspiracy does not demonstrate his plea agreement fails to accurately reflect his culpability in the conspiracy. Incarceration by itself does not mean a defendant has withdrawn his participation in a conspiracy or is no longer capable of participating in a conspiracy as a matter of law. *See United States v. Meacham*, 95 F.3d 1153, 1996 WL 494284, at *4 (6th Cir. 1996) (table decision) (rejecting defendant's claim that he should not have been held accountable for drug amounts sold by coconspirators during period of time defendant was incarcerated because "[n]othing in the record indicate[d] that [defendant] withdrew his participation in the conspiracy while he was incarcerated, and the evidence supports a finding that [defendant] could reasonably foresee that his coconspirators would continue furtherance of the [illegal] activity while he was away.).

Moreover, Brumley knew about his alleged incarceration before he signed the plea agreement and entered his guilty plea. If he felt that the plea agreement misrepresented his culpability due to the fact that he was incarcerated for a period of time during the conspiracy, Brumley could have rejected the plea offer. Instead, Brumley signed the plea agreement in which he admits that beginning in May of 2009 and continuing through August of 2014, he conspired with others to distribute oxycodone pills and was responsible for the distribution of oxycodone pills corresponding to a marijuana equivalency of between 80 and 100 kilograms. (R. 80, at 2). He affirmed under oath

16

that he had read the plea agreement and understood its terms.  He also stated that he was satisfied

with his attorney's performance.  In this regard, the transcript of the rearraignment proceeding

provides:

> THE COURT:    Have you had enough time to discuss the charges against you and the case in general before this hearing?
>
> THE DEFENDANT: Yes.
>
> THE COURT:    Have you been rushed at any point in the process leading up to today?
>
> THE DEFENDANT: No.
>
> THE COURT:    Are you satisfied with the advice, counsel and representation that Mr. Edwards has provided to you?
>
> THE DEFENDANT: Yes.
>
> THE COURT:    Do you believe he has assisted you effectively in defending the charges?
>
> THE DEFENDANT: Yes.
>
> THE COURT:    Do you have any complaint about his performance as your lawyer?
>
> THE DEFENDANT: No.

(R. 107, at 16-17).  Thus, Brumley had an opportunity at his rearraignment hearing to raise his

concerns regarding his attorney's performance during plea negotiations.  Instead, Brumley voiced

his full satisfaction with his attorney and admitted his guilt.

Brumley's last contention—that Attorney Edwards rendered deficient performance for

disregarding Brumley's assertion that he was innocent of the 18 U.S.C. § 922(g)(1) firearm offense

(Count 2) during plea negotiations—is also refuted by the record.  As discussed above, counsel was

17

able to negotiate an agreement that resulted in dismissal of Count 2 of the Indictment regarding possession of a firearm. Thus, Brumley has not shown his counsel performed deficiently in this regard.

In addition to the fact that the record does not support a finding counsel performed deficiently as Brumley complains, district courts in the Sixth Circuit considering ineffective assistance of counsel claims for attorneys' alleged failures during plea negotiations have held that the "failure to negotiate a different plea agreement may be characterized as trial strategy that does not constitute ineffective assistance of counsel." *See United States v. Jones*, No. 5:10-cr-78-JMH-EBA, 2015 WL 2342867, at *8 (E.D. Ky. May 14, 2015) (citing *United States v. Calderon*, 163 F.3d 644, 646 (D.C. Cir. 1999) (holding that counsel's decisions regarding the details of a plea agreement are "well within the realm of valid strategic decisions of competent counsel"); *see also Morris v. United States*, No. 1:12-cr-91-HSM-WBC, 2017 WL 1088289, at *6 (E.D. Tenn. Mar. 21, 2017). Further, Brumley has not pointed to any relevant authority holding that the failure of his attorney to negotiate a different or better plea agreement amounts to a deviation from reasonable professional standards. Under *Strickland*, counsel's strategic decisions in securing a plea agreement are presumed effective, and Brumley has not provided any compelling evidence that Attorney Edwards's actions in securing a plea agreement were anything other than sound trial strategy under the law.

Moreover, the Affidavit of Attorney Edwards, submitted by the Government, contains averments regarding his representation of Defendant during the plea negotiation process that indicate he provided effective assistance. In the Affidavit, Attorney Edwards explains he negotiated with the Government over a period of five months during which he spent many hours communicating with the Government and Brumley to finalize a plea agreement. (R. 110-1, at 2). In particular, Attorney

Edwards explains how he communicated with the owner of the shotgun that was the subject of Count 2, to obtain an agreement whereby Count 2 would be dismissed against Brumley. Counsel states that Brumley was active in the negotiations, rejecting the first two plea agreements presented by the Government. According to Attorney Edwards, the first agreement carried a recommended Guidelines range of 92 to 115 months and the second a range of 84 to 105 months. Each time Brumley rejected the offers, Attorney Edwards explained how he negotiated lower drug quantities to reduce the potential sentencing range. (*Id.*).

After rejecting the second plea agreement (84-105 months), counsel avers that Brumley informed him he would accept a plea agreement of 60 months. Attorney Edwards avers he attempted to further negotiate to obtain a binding plea agreement of 60 months, but was unable to do so. However, counsel explains, when a final offer from the Government was presented to Brumley containing a lower drug quantity and an estimated Guidelines range of 57 to 71 months, Brumley accepted. (*Id.*). Attorney Edwards's averments in his Affidavit support a finding that he effectively negotiated Brumley's plea agreement and that he did not perform deficiently in that regard.

In addition to his failure to demonstrate deficient performance on the part of counsel, Brumley has also failed to show that Attorney Edwards's representation during plea negotiations caused him prejudice. That is, Defendant has presented no credible evidence that the Government would have been willing to negotiate a different/more favorable plea agreement with him based on his arguments. *See Williams v. United States*, No. 1:05-CR-270, 2008 WL 59979, at *2 (W.D. Mich. Jan. 3, 2008) (finding no ineffective assistance on basis of counsel's failure to negotiate different plea agreement where petitioner failed to show that government would have entered into another agreement or that it would have been beneficial to him).

19

Further, Brumley's contention here that effective counsel would have negotiated a better bargain fails to satisfy the prejudice prong of *Strickland* as interpreted by *Hill*. Where "the petitioner's claim of prejudice rests upon an assertion that he wound up with a less favorable plea or sentence than he otherwise would have accepted with the advice of competent counsel," such a claim "is insufficient to establish actual prejudice." *Short v. United States*, 471 F.3d 686, 696-97 (6th Cir. 2006) (citing *Hill*, 474 U.S. at 59). "Under *Hill*, the question is not whether [defendant] would have received a better deal with effective representation, but whether he would have rejected the deal offered and gone to trial." *Craker v. McCotter*, 805 F.2d 538, 342 (5th Cir. 1986). Brumley has not even alleged, must less established, that there is a reasonable probability he would have rejected the plea agreement in this matter *and would have insisted on going to trial*, but for counsel's alleged errors. Brumley's claim of prejudice fails for this reason. *See United States v. Hunter*, 160 F.3d 1109, 1115 (6th Cir. 1998) (holding that the defendant could not "satisfy the prejudice prong in the absence of any statement that he is actually innocent, or would have gone to trial if his attorney's performance had been different.").

The fact remains that Brumley faced a potential maximum sentence of 20 years if he proceeded to trial. Instead, Brumley's counsel was able to negotiate a plea agreement resulting in dismissal of Count 2 and providing Brumley with an estimated Guidelines range of 57 to 71 months, a range significantly lower than the maximum penalty. Brumley chose to plead guilty pursuant to the terms of the negotiated plea agreement rather than going to trial and risking a much higher sentence. Brumley has failed to show both deficient performance and prejudice, and therefore this ineffective assistance of counsel claim fails.

20

### 2.     Brumley has not shown that his counsel advised him to accept a plea agreement holding him accountable for an ambiguous quantity of drugs.

Brumley argues his counsel was ineffective for advising him to enter into a plea agreement that was "VOID of identification with clarity regarding the actual-total amounts (units) of oxycodone pills defendant was to be held accountable for. . ." (R. 93-1, at 3). Brumley states that the plea agreement was ambiguous because it did "not list the total quantity/units of oxycodone pills that correspond to the 80 to 100 kilograms of marijuana, which, as defendant later discovered, is an astounding 80,000 to 100,000 units/pills." (*Id*. at 4). According to Brumley, this ambiguity caused him to plead guilty to a number of pills in excess of the actual numbers involved in the conspiracy and, had he understood the conversion equivalency, he would not have accepted the plea agreement. (*Id*. at 8). Instead, Brumley claims that "[f]urther negotiations would have transpired." (*Id*.).

Brumley argues his counsel also failed to explain the ambiguous reference to 80 to 100 kilograms of marijuana and, instead, "utilized the ambiguity to prevent actual disclosure." (*Id*. at 5). Brumley claims this ambiguity should be resolved in his favor under the law. Within this same argument, Brumley lists the facts provided in his plea agreement and sets forth "points of contention" he has thereto. (*Id*. at 5-6).

Brumley's argument that his plea agreement is ambiguous as to the quantity of drugs is incorrect. The plea agreement specifically states that "Defendant admits that the United States could prove beyond a reasonable doubt that he is responsible for the distribution of oxycodone pills that correspond to *a marijuana equivalency of between 80 and 100 kilograms.*" (R. 80, at 2) (emphasis added). This language provides a specific quantity that tracks the language of the United States Sentencing Commission Guidelines Manual. *See* U.S.S.G. § 2D1.1(c). As addressed in the

21

preceding section, a marijuana equivalency of 80 to 100 kilograms equates to approximately 399 to 497 oxycodone pills, 30 milligrams.[4]

Brumley's statements under oath at his rearraignment hearing contradict his assertion that he did not understand the drug-quantity term of his plea agreement and foreclose his asserted "contentions" with the facts contained therein. "Once the district court conducts the required colloquy under Federal Rule of Criminal Procedure 11, and finds the plea knowingly and voluntarily entered, absent compelling reasons to the contrary, the validity of the plea and the defendant's corresponding guilt are deemed to be conclusively established." *United States v. Sprague*, Nos. 2:06-cr-19, 2:11-cv-299, 2015 WL 630382, at *8 (E.D. Tenn. Feb. 12, 2015) (citing *Gray v. Commissioner*, 708 F.2d 243, 246 (6th Cir. 1983), *cert. denied*, 466 U.S. 927 (1984)); *see also United States v. Hyde*, 520 U.S. 670, 677 (1997) (holding a guilty plea is not "a mere gesture, a temporary and meaningless formality reversible at the defendant's whim . . . but a grave and solemn act, which is accepted only with care and discernment." (internal quotation marks and citations omitted)); *see also Blackledge*, 431 U.S. at 73-74.

---

[4] Brumley cites to *United States v. Giganti*, 405 F. App'x 31 (6th Cir. 2010) and *United States v. Debreczeny*, 69 F. App'x 702 (6th Cir. 2003) in support of his argument that his plea agreement is ambiguous and that said ambiguity must be resolved in his favor. While the court in *Giganti* and *Debreczeny* cites to the proposition that ambiguities in plea agreements are generally resolved in favor of a defendant, these cases do not support Brumley's request for relief. First, the defendants in *Giganti* and *Debreczeny* were before the court on appeal, not for adjudication of § 2255 motions. Second, these cases differ factually in that neither dealt with an alleged ambiguity in the drug quantity contained in a plea agreement.

In *Giganti*, the defendant challenged the appeal waiver contained in his plea agreement as ambiguous and claimed said ambiguity should be construed in his favor so that he could proceed with his appeal. The court, finding the waiver was not ambiguous, denied defendant the relief sought. In *Debreczeny*, the United States appealed the amount of restitution ordered by the district judge at sentencing. The district judge found the language in the defendant's plea agreement regarding restitution owed to be ambiguous. As such, the judge construed the agreement in the defendant's favor, resulting in a lower restitution obligation. The Sixth Circuit affirmed the district judge's finding that the plea agreement was ambiguous. While both of these cases pertain to ambiguities in plea agreements, neither supports Brumley's argument that the drug quantity language in his plea agreement is ambiguous.

Again, Magistrate Judge Ingram asked Brumley if he was satisfied with the advice, counsel and representation provided him by Attorney Edwards. Brumley answered in the affirmative and denied having any complaints regarding his attorney's performance. (R. 107, at 16-17). Brumley further confirmed that he had full knowledge and understanding of the contents of his plea agreement, including the facts contained therein, before he signed it. In this regard, the transcript from Brumley's rearraignment provides:

THE COURT:          Okay. Mr. Brumley, I have two documents here, the plea agreement and the sealed supplement to the plea agreement. It looks to me like you have signed both of these documents, that you signed the plea agreement back on February the 24th, and you signed the sealed supplement today. Are those in fact your original signatures?

THE DEFENDANT: Yes, they are.

THE COURT:          Okay. When I use the term "plea agreement" today, that means both of these documents together. Do you understand that?

THE DEFENDANT: Yes.

THE COURT:          Before you signed your plea agreement, did you read it?

THE DEFENDANT: Yes.

THE COURT:          Did you discuss its terms with your lawyer?

THE DEFENDANT: Yes.

THE COURT:          Do you feel like you understand everything that's in your plea agreement, sir?

THE DEFENDANT: Yes.

. . .

THE COURT:          Mr. Brumley, after hearing everything I've gone over with you, have we discussed anything at all that you have not understood?

23

THE DEFENDANT:  No.

(R. 107, at 18, 44).  Thus, during plea colloquy Brumley had ample opportunity to voice any concerns he had with his plea agreement or his counsel's performance regarding the quantity of drugs specified in the Agreement.  Defendant did not voice any concerns and, instead, confirmed his understanding of the agreement and his satisfaction with the advice given him by his attorney.  Giving Brumley's solemn declarations the strong presumption of verity due under the law, it is apparent that he understood the terms of his plea agreement.

Furthermore, Attorney Edwards's statements both at the rearraignment hearing and contained within his Affidavit confirm that he believed Brumley understood each of the terms in his plea agreement.  When asked during the plea colloquy whether he was satisfied that Brumley's plea was a knowing, voluntary, and intelligent plea, Attorney Edwards answered in the affirmative.  (*Id*. at 44).  In his Affidavit, Attorney Edwards also avers that he "believe[s] that Mr. Brumley was fully aware of the actions he was taking and that he understood the terms of the plea agreement as well as the consequences thereof."  (R. 110-1, at 4).

Finally, Brumley again fails to show he was prejudiced by his attorney's alleged errors.  In particular, Brumley does not provide the specific quantity of pills he contends he should have been held responsible for when he entered into the plea agreement and entered his guilty plea, nor does he demonstrate that the Government would have agreed to enter into a plea agreement based on such contention.  *See Williams*, 2008 WL 59979, at *2.  Moreover, the plea agreement entered into in this matter reflected the drug quantity agreed to by the parties after negotiations.  Brumley admitted under oath that he was responsible for the quantity of drugs contained therein.  Brumley's repeated confirmations as to the drug quantity he was responsible for in the conspiracy renders his claim of

24

prejudice meritless. *See United States v. Gonzalez*, 2008 WL 3874691, at *5 (N.D. Ohio Aug. 15, 2008) (holding petitioner's claim of prejudice lacks merit because petitioner "executed the [plea] agreement, confirmed in open court that he had read the written factual basis . . . and that it accurately reflected what he had done.").

Brumley now disputes the drug quantity as ambiguous and claims he received a longer sentence due to ineffective assistance of counsel. He claims, but for his counsel's ineffectiveness, he would not have entered into the plea agreement and, instead, "further negotiations would have transpired." His claim is insufficient to show prejudice under *Strickland*. As discussed in the section above, in the case of a guilty plea, "the question is not whether [defendant] would have received a better deal with effective representation, but whether he would have rejected the deal offered *and gone to trial*." *Craker*, 805 F.2d at 342 (emphasis added). Again, Brumley has not established (or even asserted) there is a reasonable probability that, but for counsel's alleged errors, he would not have pleaded guilty and *would have insisted on going to trial*. Instead, he claims that further plea negotiations would have transpired. This is not sufficient to show prejudice. *See Hunter*, 160 F.3d at 1115. As Brumley has failed to show either deficient performance or resulting prejudice, he has not shown he received ineffective assistance of counsel as he claims.

For the first time in his Reply brief, Brumley argues that the Court should apply "the Rule of Lenity" when considering whether he is entitled to relief under claim two. (R. 113, at 9, 12, 13). Again, Brumley's raising this argument for the first time in his Reply filing is improper and his newly-raised claim could be rejected on this basis. *See Sanborn*, 629 F.3d at 579 (citing *Am. Trim, L.L.C.*, 383 F.3d at 477; *see also McCorkle*, 2010 WL 2131907, at *7; *Burns,* 328 F. Supp. at 724.

In addition to being procedurally improper, Brumley's claim in his Reply fails on the merits. Sixth Circuit law provides that in a situation where a criminal statute is ambiguous, the rule of lenity dictates the ambiguity must be resolved in the defendant's favor. Specifically, the rule of lenity only applies if, "after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *United States v. Morales*, 687 F.3d 697, 701 (6th Cir. 2012) (quoting *Barber v. Thomas*, 560 U.S. 474, (2010)). "We have described the rule of lenity as 'a tiebreaker of last resort' that is appropriate only when, 'after consulting traditional canons of statutory construction, we are left with an ambiguous statute.'" *Id*. (quoting *United States v. Canal Barge Co., Inc*., 631 F.3d 347, 353 (6th Cir. 2011)).

The rule of lenity is not applicable to the facts of this matter. Brumley's arguments in his § 2255 Motion center around his claim that his counsel was ineffective for advising him to plead guilty to a plea agreement he argues was ambiguous as to the quantity of drugs he was responsible for. Brumley does not argue he is entitled to relief because of an ambiguity in a criminal statute. The rule of lenity does not provide a basis for the § 2255 relief Brumley seeks in claim two.

### 3. Brumley has not shown that his counsel provided misleading advice during the sentencing phase or was ineffective for failing to object to the PSR.

Brumley's third claim is that his "counsel's failure to explain the equivalency issues and object to the same presentation in the PSR was deficient performance." (R. 93-1, at 9). Brumley claims that counsel's failure in this regard precluded him from any meaningful participation in the sentencing phase of his case. (*Id*.). This argument is without merit.

26

The evidence in the record refutes Brumley's assertion that he received ineffective assistance of counsel at sentencing. At the sentencing hearing, the presiding District Judge asked Brumley if he had received a copy of the PSR prepared in this matter. Brumley responded, "Yes, I did." (R. 108, at 3). In a section entitled "The Offense Conduct," the PSR sets forth the underlying facts constituting Brumley's criminal conduct. This section specifically provides, "[b]ased on controlled purchases, witness statements, and other evidence, Johnny Brumley is responsible for distributing oxycodone with a marijuana equivalency of at least 80 kilograms but less than 100 kilograms." (PSR, at 3, ¶ 7). The District Judge explained he wanted to ensure that Brumley had an opportunity to review the PSR, discuss it with his attorney, and ask any questions he may have. When asked if this occurred, Brumley responded in the affirmative. (R. 108, at 3). The District Judge then asked counsel if he had any objections to raise on Brumley's behalf and Attorney Edwards responded that he did not. (*Id.*).

Further, in Attorney Edwards's Affidavit, he explains that he mailed the PSR to Brumley on June 4, 2015, approximately a month prior to sentencing, and requested Brumley advise of any objections. (R. 110-1, at 4). Attorney Edwards states he met with Brumley prior to sentencing and informed Brumley that he was unaware of any legal objections to the PSR. According to counsel, Brumley concurred with his assessment. Attorney Edwards avers that Brumley did not indicate he had any objections to the PSR prior to sentencing nor did he notify counsel that he did not understand any portion thereof. (*Id.*). Through the colloquy at the rearraignment hearing and his receipt and review of the PSR, Brumley was well aware that he was pleading guilty and being sentenced based on his admission that the Government could prove he was responsible for distributing oxycodone with, for sentencing purposes, a marijuana equivalency 80 to 100 kilograms.

27

Despite his knowledge of this fact, there is no evidence to suggest that Brumley indicated, either to the Court or to counsel, that he did not understand the quantity provided in his plea agreement and PSR. In fact, Brumley repeatedly confirmed he had read his plea agreement and PSR and understood the terms therein. Thus, Brumley has not shown deficient performance by counsel in this regard.

Neither has Brumley shown that his counsel's failure to object to the PSR caused him prejudice. Heading into the sentencing hearing in this matter, Brumley had already signed a plea agreement in which he admitted the United States could prove beyond a reasonable doubt that he was responsible for the distribution of oxycodone pills corresponding to a marijuana equivalency of between 80 and 100 kilograms. Brumley had also confirmed under oath at his rearraignment proceeding that he understood and agreed with this provision of his plea agreement. The undersigned has already determined in the preceding sections that Brumley did not receive ineffective assistance of counsel during plea negotiations and that the drug quantity contained in the plea agreement is not ambiguous. Thus, even if counsel had objected at sentencing to the drug quantity reference contained in the PSR, Brumley has not shown that said objection would have been well-taken by the District Judge or would have somehow resulted in his receipt of a lower sentence. As Brumley has failed to demonstrate deficient performance by his attorney and resulting prejudice, he has failed to show he received ineffective assistance of counsel on this claim.

> **4.    Brumley has not shown that his counsel was ineffective for advising him not to seek a mitigating role reduction pursuant to United States Sentencing Guidelines § 3B1.2.**

Brumley's fourth claim in his § 2255 Motion is that his counsel was ineffective for advising him to waive in his plea agreement the filing of a motion for a mitigating role reduction pursuant to United States Sentencing Guidelines § 3B1.2. (R. 93-1, at 10-12). In support of this claim, Brumley

argues that he appears to qualify for a decrease in his offense level pursuant to Guidelines § 3B1.2 based upon his limited involvement in the conspiracy. As a result, claims Brumley, counsel's advice that he waive his right to file such a motion constituted deficient performance that resulted in him receiving a longer sentence.

As discussed above, "failure to negotiate a different plea agreement may be characterized as trial strategy that does not constitute ineffective assistance of counsel." *Jones*, 2015 WL 2342867, at *8 (citing *Calderon*, 163 F.3d at 646) (holding that counsel's decisions regarding the details of a plea agreement are "well within the realm of valid strategic decisions of competent counsel")); *see also Morris*, 2017 WL 1088289, at *6.

In this matter, Defendant faced a maximum sentence of 20 years' incarceration for his criminal conduct. Defense counsel was able to negotiate a plea agreement with an estimated Guidelines range of 57 to 71 months. One of the terms of the negotiated plea agreement was that Brumley agree not to seek a reduction under United States Sentencing Guidelines § 3B1.2. In exchange for this provision, and certain waivers and other provisions in the plea agreement, the Government agreed to move for dismissal of Count 2 and lower the drug quantity Brumley would be held responsible for. (*See* R. 110-1, at 2). Brumley was also offered and received a 3-point reduction in his base offense level for acceptance of responsibility.

Moreover, Attorney Edwards explains in his Affidavit that he and Brumley discussed the provision in the plea agreement in which he agreed not to seek a mitigating role reduction pursuant to Sentencing Guidelines § 3B1.2. (*Id*. at 3). Attorney Edwards states he did not believe the role reduction motion would be applicable under the facts of this case and, thus, he and Brumley agreed that the language waiving Brumley's right to bring such a motion could remain in the agreement.

(*Id*.).  Attorney Edwards explains, however, that he did advocate to remove language in the plea agreement waiving Brumley's right to bring motions for departures under United States Sentencing Guidelines Chapters 5 H and K to ensure Brumley could file all potentially applicable motions.  (*Id*. at 2-3).

The underlying facts in this matter, along with Attorney Edwards's averments in his Affidavit, demonstrate that counsel and Brumley discussed the matter and made a strategic choice to allow the § 3B1.2 waiver language to remain in the plea agreement.  Under these circumstances, Brumley "must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689.

Brumley attempts to overcome this presumption by arguing in his Reply that he recalls speaking with Attorney Edwards about this particular waiver and Attorney Edwards advising him that he was not entitled to a role reduction under § 3B1.2 because he "was only being held accountable for the quantity of pills attributed to him.  That being for his part in the conspiracy." (R. 113, at 17).  Brumley claims he agreed to waive the filing of a § 3B1.2 motion based on this advice, but he has since discovered that such advice was not accurate.  (*Id*. at 17-24).  Brumley attaches an affidavit to his Reply in support of these contentions.  (R. 113-1, at 1).  This allegation does not, however, change the result.

As discussed above, the waivers contained in Brumley's plea agreement, including his agreement not to seek a mitigating role reduction, were concessions Brumley agreed to make during the plea bargaining process in order to receive a more favorable sentence and avoid facing a potential 20-year sentence of imprisonment if convicted at trial.  Brumley was offered a plea agreement with an estimated Guidelines range of 57 to 71 months and he accepted.  Brumley's request that his Court

engage in post hoc second-guessing of Attorney Edwards's strategic decisions while negotiating Brumley's plea agreement is precisely what *Strickland* bars. *Strickland*, 466 U.S. at 689.

In addition, Brumley has not shown that Attorney Edwards's advice to waive the filing of a motion for a mitigating role reduction pursuant to U.S.S.G. § 3B1.2 caused him prejudice. Brumley has presented no evidence that the Government would have been willing to enter into a plea agreement that did not contain such a waiver. *See Williams*, 2008 WL 59979, at *2. Further, Brumley has not shown (or even argued) that there is a reasonable probability that, but for counsel's alleged error in advising Brumley, he would not have pleaded guilty and would have insisted on going to trial. Brumley's failure to set forth such an argument is fatal to his claim of prejudice. *See Hunter*, 160 F.3d at 1115. Brumley's failure to demonstrate deficient performance and prejudice in this regard means that he has failed to show he received ineffective assistance of counsel.[5]

### B.    Brumley's cumulative error argument lacks merit.

The last claim asserted in Brumley's Motion is entitled "Cumulative Error." (R. 93-1, at 12). Brumley asserts that "collectively the matters addressed in Grounds 1-4 warrant sentencing relief." (*Id*.). However, because Brumley's allegations of ineffective assistance are groundless, there is no need to conduct a cumulative error analysis. *See United States v. Moye*, 951 F.2d 59, 63 n.7 (5th Cir. 1992) ("Because we find no merit to any of [defendant's] arguments of error, his claim of cumulative error must also fail."); *Orris v. United States*, No. 05-cv-468, 2006 WL 2373252, at *10 (S.D. Ohio

---

[5] In his § 2255 Motion, Brumley vaguely states, "[f]urthermore, § 3B1.2 was recently clarified and made retroactive to collateral review. Defendant would respectfully move for considerations under same. And will rely on counsel's IAC concerning the waiver in the plea agreement." (R. 93-1, at 12). To the extent Brumley is arguing for application of Amendment 794 to U.S.S.G. § 3B1.2 to his case, such relief is not available. As noted by Brumley, he waived his right to file a motion for a mitigating role reduction pursuant to U.S.S.G. § 3B1.2 in his plea agreement. Although Brumley argues that the waiver was the result of ineffective assistance of counsel, that claim has been considered and found it to be without merit.

Aug. 14, 2006) (holding that cumulative error claim was without merit because each of defendant's preceding allegations were without merit); *Snyder v. United States*, No. 95-cr-81146-DT-18, 2001 WL 279758, at *7 (E.D. Mich. Jan. 22, 2001) (finding that a claim of cumulative error cannot be based on rejected attorney errors). As such, Brumley is not entitled to relief on this claim.

### C. Brumley has not demonstrated that he is entitled to an evidentiary hearing.

As a final matter, Brumley requests an evidentiary hearing. Section 2255 directs the Court to hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Thus, to receive a hearing, a defendant must present allegations that raise at least some possibility of relief. "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir.1999)). An evidentiary hearing is also not required where "there is nothing in the record to indicate that [the] defendant would [be] able to prove his allegations at an evidentiary hearing." *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008). Here, as delineated above, the record in this case conclusively shows that Brumley is not entitled to relief. Furthermore, other than his own unsubstantiated and self-serving statements, Brumley has not identified any additional evidence he could present at an evidentiary hearing. For these reasons, an evidentiary hearing is not required, and it will be recommended that this request be denied.

## III. CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate may issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Brumley's § 2255 Motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it will further be herein **recommended** that a certificate of appealability be **denied** upon the District Court's entry of its final order in this matter.

## IV.   CONCLUSION AND RECOMMENDATIONS

Accordingly, the Court being sufficiently advised, for the reasons stated herein,

**IT IS ORDERED** that Defendant Johnny Brumley's Motion for Leave to File an Extended Traverse (R. 112) is **granted.**

33

Further, **IT IS RECOMMENDED** that:

(1)    Defendant Johnny Brumley's Motion to Vacate, Set Aside, or Correct a Sentence under 28 U.S.C. § 2255 (R. 93) **be denied;**

(2)    Defendant's request for an Evidentiary Hearing **be denied;**

(3)    a Certificate of Appealability **be denied** by the District Judge in conjunction with the Court's entry of its final order in this matter;

(4)    Judgment in favor of the United States **be entered** contemporaneously with the District Court's entry of its final order; and,

(5)    this action **be stricken** from the active docket of this Court.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Walters,* 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 9th day of August, 2017.



**Signed By:**

_**Candace J. Smith**_

**United States Magistrate Judge**